GRIMES, Acting Chief Judge.
These consolidated appeals involve disputes over coverage between the insurance carriers for codefendants.
The point on appeal is the same in both cases. Essentially, motor vehicle dealers had loaned vehicles to drivers who became involved in accidents with third parties. There was no agreement between the dealers and the drivers concerning insurance coverage. In each case, a negligence action was brought against the driver, and the dealer, as the owner of the vehicle, was joined as a defendant under the dangerous instrumentality doctrine. The dealers and their liability insurer, Universal Underwriters Insurance Company (Universal), sought indemnification against the drivers and their respective liability insurance carriers, Farm Bureau Insurance Company (Farm Bureau) and Allstate Insurance Company (Allstate). The plaintiffs obtained judgments against all defendants, and the court *1025 ruled in favor of the drivers and their insurance carriers on the claims for indemnification. The dealers and Universal brought these appeals which were consolidated upon joint motion of the parties.
An owner of a motor vehicle who is liable only vicariously to a third person because of a motor vehicle accident is enti'tled to recover from the driver of the vehicle if he is the active tort-feasor. Hertz Corp. v. Richards, 224 So.2d 784 (Fla. 3d DCA 1969). However, an insurance company may not seek indemnity from its own insured. Allstate Insurance Co. v. Fowler, 480 So.2d 1287 (Fla.1985). Therefore, the question in these cases is whether the respective drivers were insureds under the motor vehicle dealers’ policies written by Universal.
For purposes of this appeal, the policies involved in each case are identical. The printed portion sets forth the coverage for auto physical damage (part 300), property (part 330), crime (part 380), garage insurance (part 500), basic auto insurance (part 900), general liability insurance (part 950), personal umbrella (part 970), and umbrella (part 980). The two parts dealing with motor vehicle liability coverage are the garage insurance and the basic auto insurance. Universal explains that under its specialized policy for motor vehicle dealers, the garage insurance covers vehicles which come and go through the dealer’s hands by way of resale, while the basic auto insurance covers other vehicles held for longer periods of time, such as courtesy vans or automobiles used by officers of the dealership or their families. Universal concedes that the vehicles involved in the accidents in these cases were covered under the garage insurance part of the policy, thereby satisfying all requirements of the financial responsibility laws. Because of the narrow definition of insured under garage insurance, Farm Bureau and Allstate make no contention that the drivers were covered under that part of the policy. Farm Bureau and Allstate argue that the drivers were covered under the basic auto insurance part of the policy because that part defines an insured to include “any other person using an OWNED AUTO” within the scope of the named insured’s permission. Universal responds by referring to the definition of OWNED AUTO under the basic auto insurance which reads:
“OWNED AUTO” means an AUTO YOU own or LEASE and is scheduled in the declarations, and any AUTO YOU purchase or LEASE as its replacement during the Coverage Part period.
Universal points out that the vehicles involved in these accidents were not scheduled in the declarations for coverage under this part of the policy.
Farm Bureau and Allstate make three arguments that application of the OWNED AUTO definition does not preclude the drivers involved in these accidents from being insureds under basic auto insurance (part 900). First, they point out that the typed declarations listed no motor vehicles whatsoever under that part. Thus, they contend that the provisions for basic auto insurance in the printed portion of the policy could have no meaning unless they are construed to apply to all of the vehicles owned by the respective dealerships. However, the mere absence of scheduled vehicles does not render void the requirement that to be insured under the basic auto insurance (part 900), a vehicle must be scheduled. Even if there were no vehicles scheduled for coverage when these policies were issued, the dealers could always later add vehicles for scheduling under that part. Moreover, the fact that coverage is described in a policy which does not apply to an insured's particular situation neither renders the policy ambiguous nor a nullity. Cf. Nicks v. Hartford Insurance Group, 291 So.2d 673 (Fla. 2d DCA 1974).
As the basis for their second argument, Farm Bureau and Allstate point out that in the declaration under property (part *1026 300), all new and used vehicles are included. They suggest that since there is no other list of scheduled vehicles in the declaration, this list should also apply to the basic auto insurance (part 900). This argument cannot prevail because of the provision in the preamble of the policy, which reads:
This entire document constitutes a multiple coverage insurance policy. Unless stated otherwise in a Coverage Part, each Coverage Part is made up of its provisions, plus those of the State Amendatory Part (if any), the General Conditions, and that portion of the declarations referring to the Coverage Part, including all endorsements made applicable to that Coverage Part. Each Coverage Part so constituted becomes a separate contract of insurance.
Thus, each coverage part is a separate contract made up of its provisions and that portion of the declarations sheet pertaining to it.
Finally, we reject, as unsupported by common rules of grammar, the argument that the definition of OWNED AUTO in the basic auto insurance part means only those leased vehicles scheduled in the declarations, but includes all vehicles owned by the dealer regardless of whether they are scheduled. Even a casual reading of this provision demonstrates that the word “or” simply serves to differentiate owned vehicles from leased vehicles and the phrase “as scheduled in the declarations” modifies both owned and leased vehicles.
We hold that while Universal policies provided the motor vehicle dealers with liability coverage for these accidents, the drivers to whom the subject vehicles had been loaned were not insureds under the policies. Therefore, we reverse the judgments on the claims for indemnification and direct that judgments be entered in favor of the dealers and Universal and against the drivers and their respective insurers. The judgments for the plaintiffs, which were not at issue on this appeal, will remain standing.
SCHEB and HALL, JJ., concur.